IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Tyrone Lewis, Jr., | ) Civil Action No.:2:14-cv-04555-DCN-MGB |
| Petitioner, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| v. | ) **OF MAGISTRATE JUDGE** |
| | ) |
| Leroy Cartledge, *Warden*, | ) |
| | ) |
| Respondent. | ) |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 19; *see also* Dkt. No. 18.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner brought the instant habeas action on November 24, 2014. (*See* Dkt. No. 1 at 15 of 16; *see also* Dkt. No. 1-2 at 2 of 2.) On April 3, 2015, Respondent filed a Motion for Summary Judgment. (Dkt. No. 19; *see also* Dkt. No. 18.) By order filed April 3, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 20.) Petitioner filed a Response in Opposition to the Motion for Summary Judgment on or about June 1, 2015. (Dkt. No. 25.)

**PROCEDURAL HISTORY**

The Petitioner is currently confined at McCormick Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In November of 2007, the Richland County Grand Jury indicted Petitioner for murder. (*See* R. at 105-07.) Petitioner was represented by Todd Rutherford, Esquire. (*See* R. at 1.) On October 16, 2008, Petitioner pled guilty as charged before the

1

Honorable J. Michelle Childs. (*See* R. at 1-21.) On October 16, 2008, Judge Childs sentenced Petitioner to 30 years. (R. at 20.)

It is unclear whether Petitioner filed a direct appeal.[1] However, on June 11, 2009, he filed an application for post-conviction relief ("PCR"). (R. at 22-28.) The following questions and answers appeared in his PCR application:

> 10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
> > (a) The Applicant received Ineffective Assistance of Counsel prior and during his plea in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 14 of the South Carolina Constitution.
> >
> > (b) The Applicant's Plea of Guilty was not Voluntarily and Intelligently entered. The judgment and sentence against the Applicant were entered in violation of his right to due process of law and effective assistance of counsel.
>
> 11. State concisely and in the same order the facts which support each of the grounds set out in (10):
>
> > (a) Trial Counsel failed to adequately investigate the Applicant's charge, failed to investigate and interview potential witnesses and failed to give his client adequate legal advise [sic] prior to Applicant's guilty plea proceeding. Trial Counsel failed to fully advise the Appl[i]cant of the consequences of his plea and further failed to investigate defenses against the charge against the Applicant.
> >
> > (b) Counsel failed to provide client effective assistance of counsel prior to and during his guilty plea proceeding. The Applicant's plea of guilt was coerced by counsel's failure to provide adequate representation.

(R. at 24.)

---

[1] In his Response in Opposition to the Respondent's Motion for Summary Judgment, Petitioner asserts he did file a direct appeal and cites to "*State v. Lewis*, Op. No. 2008-UP-665." (*See* Dkt. No. 25 at 7 of 26.) The case number to which Petitioner refers is *In the Interest of Tyrone L., Jr., a Juvenile under the Age of Seventeen*, No. 2008-UP-665 (Ct. App. Dec. 8, 2008); that case is an appeal from Judge Joseph W. McGowan, III, Family Court Judge. Whether Petitioner filed a direct appeal from his murder conviction or sentence is not material in the case *sub judice*.

On June 7, 2011, an evidentiary hearing was held before Judge James R. Barber, III. (R. at 35-92.) Petitioner was present and represented by Tara D. Shurling, Esquire. (*See* R. at 35.) In a written order dated August 17, 2011, Judge Barber denied the application for post-conviction relief and dismissed the petition. (R. at 93-104.)

Petitioner, through his attorney Robert M. Dudek, Esquire, of the South Carolina Commission on Indigent Defense, filed a Petition for Writ of Certiorari on May 14, 2012. (*See* Dkt. No. 18-3.) Through counsel, Petitioner raised the following issue:

> Whether the Court erred by ruling defense counsel did not provide ineffective assistance of counsel where it was undisputed counsel erroneously advised petitioner he would serve 85% of his sentence for murder where he actually had to serve that sentence "day for day" since petitioner would not have pled guilty if he had not been erroneously advised about "parole" or his "max out" date?

(Dkt. No. 18-3 at 4 of 15.)

In an order filed July 18, 2014, the South Carolina Court of Appeals denied the petition for a writ of certiorari. (Dkt. No. 18-5.) The matter was remitted to the lower court on August 6, 2014. (Dkt. No. 18-6.)

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review (verbatim):

> **GROUND ONE**: The Applicant received IEOC prior/during his plea in violation of his Six and Fourteenth Amendment State and Federal Constitution.
> **Supporting facts**: Counsel failed to adequately investigate the charge, to investigate and interview potential witnesses, give adequate legal advice prior to guilty plea. Counsel failed to fully advise the Applicant of the consequences of his plea and failed to investigate defenses of the charge against the Applicant.
>
> **GROUND TWO**: The Applicant's plea of guilty was not voluntary/intelligently entered. The judgment/sentence were entered in violation of due process and IEOC.
> **Supporting facts**: Counsel failed to provide client effective assistance of counsel prior to and during his guilty plea proceeding. The Applicant's plea of guilty was coerced by counsel's failure to provide adequate representation.
>
> **GROUND THREE**: It was undisputed counsel advised [Applicant] he would serve 85% when the sentence was day for day.
> **Supporting facts**: Whether the Court erred by ruling defense counsel did not provided IEOC where it was undisputed counsel erroneously advised petitioner he would serve 85% of his sentence for murder where he actually had to serve that

> sentence "day for day" since petitioner would not have pled guilty if he had not been erroneously advised about "parole" or his "max out" date?

(Dkt. No. 1 at 6-9 of 16.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 19; *see also* Dkt. No. 18.) For the reasons set forth herein, the undersigned recommends granting Respondent's motion.

### A.     Ground One

In Ground One, Petitioner contends that his attorney was ineffective because counsel "failed to adequately investigate the charge, to investigate and interview potential witnesses, give adequate legal advice prior to guilty plea." (Dkt. No. 1 at 6 of 16.) Petitioner also asserts that his attorney "failed to fully advise the [Petitioner] of the consequences of his plea and failed to investigate defenses of the charge against the [Petitioner]." (*Id*.)

Respondent asserts Ground One is "procedurally defaulted . . . because it was not presented to the state supreme court on certiorari." (Dkt. No. 18 at 7 of 37.) The undersigned agrees. As noted above, Petitioner presented one issue to the Supreme Court of South Carolina in his petition for writ of certiorari; this issue pertained to counsel's erroneous advice about his sentence. (*See* Dkt. No. 18-3 at 4 of 15.) Accordingly, Ground One is procedurally barred. *See Longworth v. Ozmint*, 377 F.3d 437, 447-48 (4th Cir. 2004) (concluding that certain grounds are "procedurally defaulted as a result of [the petitioner's] failure to raise them in his petition for certiorari to the South Carolina Supreme Court for review of the State PCR Court's decision"); *see also Ward v. McLeod*, No. 3:01-0012-25BC, 2002 WL 31996018, at *4 (D.S.C. Apr. 18, 2002) ("When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.").

5

Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995), or abandonment by counsel. *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012) (inquiring "whether [the petitioner] ha[d] shown that his attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond his control, necessary to lift the state procedural bar to his federal petition" (internal quotation marks and citations omitted)).

In his Response in Opposition, Petitioner asserts that he "can show both cause and actual prejudice to obtain relief from a defaulted claim." (Dkt. No. 25 at 10 of 26.) Petitioner states (verbatim),

> Had Appellate Defender Dudek Esq., raise the issue address in the Order of dismissal he would have complied with the state rules and Petitioner would not have been prejudice for leaving Ground One open and did not allow Petitioner a valid appeal.

(*Id*.) Petitioner appears to be arguing that any default should be excused due to the ineffective assistance of appellate counsel. (*Id*.) Pursuant to *Martinez*, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315. To establish that PCR Counsel provided ineffective assistance of counsel, Petitioner must show that: (1) his counsel's performance "fell below an objective standard of reasonableness"; and (2) he was prejudiced by his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. To establish prejudice, Petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *see also Preyor v. Stephens*, 537 F. App'x 412, 421 (5th Cir. 2013) ("To establish

6

ineffective assistance of his initial state habeas counsel, [Petitioner] must show both that habeas counsel's performance . . . was deficient and that he was prejudiced by the deficient performance—that is, there is a reasonable probability that he would have been granted state habeas relief had the claims been presented in the first state habeas application."); *Foley v. White*, No. 6:00-CV-552-DCR-REW, 2012 WL 6965070, at *9 (E.D. Ky. Nov. 15, 2012), adopted at 2013 WL 375185 (E.D. Ky. Jan. 30, 2013) ("In the context of *Martinez*, a demonstration of prejudice would require [Petitioner] to show that, but for post-conviction counsel's errors, there is a reasonable probability he 'would have received relief on a claim of ineffective assistance of trial counsel in state court.'" (quoting *Leavitt v. Arave*, No. 1:93-cv-0024-BLW, 2012 WL 1995091, at *10 (D. Idaho June 1, 2012))); *Horonzy v. Smith*, No. 1:11-cv-00235-EJL, 2012 WL 4017927, at *6 (D. Idaho Sept. 12, 2012) ("The application of the *Strickland* test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one.").

As a preliminary matter, it is not clear that *Martinez* applies to a claim of ineffective assistance of appellate counsel. *See Gore v. Crews*, 720 F.3d 811, 815-16 (11th Cir. 2013) ("*Martinez* . . does not apply in the circumstances of this case because [the petitioner's claim] . . . is not a claim that trial counsel was ineffective."); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) ("Under *Martinez*'s unambiguous holding our previous understanding of *Coleman* in this regard is still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel."); *cf. Johnson v. Warden of Broad River Corr. Inst.*, No. 12-7270, 2013 WL 856731 (4th Cir. Mar. 8, 2013) ("B]ecause Johnson alleges only ineffective assistance of *appellate* postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in *Martinez*. Instead, his claims fall under the general *Coleman* rule that ineffective assistance of postconviction counsel cannot constitute cause

for procedural default."). *But see Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1295-96 (9th Cir. 2013) (concluding *Martinez* also applies to a claim of ineffective assistance of appellate counsel). Moreover, Petitioner has made no showing that–but for counsel's failure to raise this claim in the petition for writ of certiorari–the court would have granted the Petitioner's requested relief. Accordingly, Ground One is procedurally defaulted, and Respondent is entitled to summary judgment as to this ground.

## B.     Grounds Two and Three

In Ground Two, Petitioner asserts his guilty plea "was not voluntarily/intelligently entered." (Dkt. No. 1.) Petitioner contends his guilty plea "was coerced by counsel's failure to provide adequate representation." (*Id*.) In Ground Three, Petitioner asserts counsel was ineffective in advising him that he "would serve 85% when the sentence was day for day." (*Id*.) Petitioner further asserts he "would not have pled guilty if he had not been erroneously advised about his 'parole' or his 'max out' date." (*Id*.)

The PCR court summarized Petitioner's testimony at the PCR hearing as follows:

> The Applicant testified that his plea counsel was retained a week or two after the incident. He told this Court that he did not get his motion for discovery until a month before his plea and that when he did get it no one went over the materials with him. He also testified that plea counsel only came to see him one (1) or two (2) times.
>
> The Applicant testified that his half-brother, Michael Long, was not charged and gave two (2) written statements to police. He stated that he originally wanted a jury trial because the State did not have enough evidence due to conflicting statements. Applicant testified that he did not discuss the facts and circumstances leading up to the shooting with his plea counsel. He told this Court that he gave a statement to police that he was threatened by the victim prior to the shooting. He explained that plea counsel told him a self-defense defense would not work and the death penalty would be possible. Applicant testified that he thought the penalty was thirty (30) years to life or death. He also testified that he was only eighteen (18) at the time and plea counsel told him that if he pled to thirty (30) years he would have to do eighty five (85) percent.
>
> The Applicant further testified that the Solicitor, Luck Campbell, said "day for day" at the plea hearing. He told this Court that up until that point he had thought he was pleading to eighty five (85) percent for the thirty (30) years. The Applicant said that he did not know he could withdraw his plea and that he would have if he

8

understood what "day for day" meant. He also told the Court that he understands the risk of a successful PCR, and that he would not have pled but for the erroneous advice of plea counsel, i.e. eighty five (85) percent.

The Applicant testified that he did shoot the victim but it was in self-defense. He explained that the victim had threatened him a week before the shooting and that he knew the victim because they were in the twelfth (12th) grade together. Applicant testified that the State's version of the facts were correct: the victim was the driver in a prior shooting and that his crime took place at night.

(R. at 95-96.)

The PCR court then summarized the testimony of plea counsel:

Plea counsel, Mr. Rutherford, testified that . . . he spoke with the Applicant after he was already imprisoned. Plea counsel told this Court that the Applicant told him that he gave a statement to the police to protect his little brother who was also in the car during the shooting. Plea counsel said that the co-defendant's nickname was "Killer." He testified that the Applicant had a letter that he allegedly got from "Killer" that stated "Killer" did it. Plea counsel testified that they moved past the letter because he couldn't confirm it so they wouldn't be able to put it up as evidence.

Mr. Rutherford testified that ballistics proved that Applicant was the only possible shooter so he needed to plea. Plea counsel explained that the "Gangster Killer Bloods" were a big deal with the Solicitor which made it difficult to negotiate a deal. He told this Court that he told the Applicant that he could get "thirty (30) to life." Plea counsel also testified that he never heard from the Applicant that he wanted a trial or that the threshold sentence would prevent him from pleading to the charges.

Plea counsel said that he is positive he told the Applicant, on more than one occasion, that this was an eighty five (85) percent crime. He also testified that he restated eighty five (85) percent at the plea hearing but the judge shook her head no and Ms. Campbell stated it was "day to day." Plea counsel said that there was not any option to receiving any lesser included sentence for to [sic] murder.

Mr. Rutherford testified that there was significant evidence against the Applicant and that he may have glanced over the self-defense defense and showed Applicant why it did not apply. Plea counsel explained that he does not see and never did see self-defense in this case. He testified that he met with the Applicant numerous times. He also explained that he went down to the detention center whenever the Applicant's father told him that the Applicant "wants to see you." Mr. Rutherford further explained that the Applicant was not much of a talker and there wasn't much to talk about because there was a strong case against the Applicant.

Plea counsel testified that he did review discovery with the Applicant. He told the Court that if the Applicant would have showed any reluctance at the plea hearing

> then he would have stopped and further explained "day for day." Plea counsel said that he "leaned over and asked [Applicant] if he understood" day to day and the Applicant said he did.
>
> Plea counsel told this Court that the ballistics and the statement by Mr. Long were conclusive in his mind. He said that he knew Mr. Long admitted that he had a "Glock" in the car during the shooting, but he explained it did not matter if Mr. Long said he discharged it because the Applicant said he shot the victim. Plea counsel testified that he saw no significance to whether Mr. Long shot his gun. He further explained that he and the Applicant talked about how "Killer" could have shot the victim and how this was not a plausible scenario. Plea counsel also testified that he and the Applicant did discuss the letter that was allegedly from "Killer" but Applicant was exceptionally vague and said he didn't want to present the letter; plea counsel's attitude suggested that he perhaps was concerned that the letter was not authentic.
>
> Mr. Rutherford continued to testify and stated that he did not ask for a recess at the plea hearing because he asked the Applicant if he was okay with the sentence and the Applicant said he was. Plea counsel explained that the Applicant's only goal was to get out of the charges and once he realized that was not a realistic option, he wanted to shoot for the minimum. Plea counsel further explained that, in his opinion, it would have been detrimental to withdraw the plea because this was a high profile "Gangster Killer Blood" case. Mr. Rutherford also said that the Applicant never led him to believe that the "day for day" portion of the plea was a deal breaker. He testified that he did not know if anyone told Applicant he could withdraw his plea but that he told Applicant that he would have to serve what the judge sentences him to. Plea counsel explained that he told Applicant before the plea hearing started that if he had any questions to "tap me" and we will stop the hearing and I will address your concerns.

(R. at 96-98.)

The PCR court found that beyond Petitioner's "review of the undisputed procedural history," Petitioner's testimony was "not credible" but that plea counsel's testimony was credible. (R. at 100.)

In rejecting Petitioner's claims, the PCR court stated as follows:

> The Applicant's claims of ineffective assistance of counsel based on plea counsel's alleged failure to provide adequate legal advice prior to his guilty plea, and plea counsel's alleged failure to fully advise him of the consequences of his plea are without merit. Plea counsel testified at the PCR hearing that he met with Applicant numerous times and is positive the he told the Applicant he would have to serve eighty five (85) percent of the thirty (30) year plea. Further, plea counsel further testified that he told Applicant that he could get thirty (30) years to life and that he would have to serve whatever sentence the judge gives him. Plea counsel went on to testify that he told the Applicant to "tap" him during the plea hearing if he didn't

understand something and that he would address his concerns. Further, plea counsel testified at the PCR hearing that he asked the Applicant if he understood the "day for day" portion of the plea and the Applicant said yes. "Wishful thinking regarding sentencing does not equal a misapprehension concerning the possible range of sentences, especially where one acknowledges on the record that one knows the range of sentences and that no promises have been made." Wolfe v. State, 326 S.C. 158, 165, 485 S.E.2d 367, 371 (1997). This Court finds that the Applicant's plea counsel rendered adequate assistance and provided representation within the range of competence required by attorneys in criminal cases. *See* Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Therefore, the Applicant has not met his burden.

The Applicant's claim that plea counsel failed to investigate defenses against the charge against him is without merit. This claim is directly refuted by plea counsel's testimony. Plea counsel testified at the PCR hearing that he went over the self-defense defense with Applicant and showed him why it didn't apply. He further testified that they discussed how the co-defendant may have committed the murder but there were no plausible scenarios to back that defense. "Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result." Moorehead v. State, 329 S.C. 329, 496 S.E.2d 415 (1998). Therefore, the Applicant has failed to meet his burden.

The Applicant's final allegation is that his plea of guilt was coerced by plea counsel's failure to provide adequate representation. This Court finds that plea counsel did provide adequate representation and that this allegation is conclusively refuted by the record. Plea counsel testified that he told the Applicant to "tap" him during the plea hearing if he didn't understand something and he would address his concerns. Plea counsel testified that he specifically asked Applicant, at the plea hearing, if he understood his sentence and the Applicant answered in the affirmative. Applicant testified that no one promised him anything (Plea transcript p. 8, l. 9) or threatened or mistreated him in order to get him to plead guilty. (Plea transcript p. 7, l. 4.) Applicant stated that he was pleading guilty freely and voluntarily (Plea transcript p. 7, l. 6), and that he was satisfied with the services of his lawyer. (Plea transcript p. 9, l. 6). Further, Applicant testified that he had enough time to speak with his attorney about the charge, the maximum possible punishment, his constitutional rights, that he has understood those conversations, and that he felt like he had enough time to make an informed and educated decision about his guilty plea. (Plea transcript p. 7, l. 7-21).

This Court further finds that Applicant has failed to carry his burden of proving that his guilty plea was not freely and voluntarily entered. The overwhelming evidence in the record and presented through the testimony of the witnesses at the hearing reflects that the plea was knowingly and voluntarily entered. Boykin v. Alabama, 395 U.S. 238 (1969); Vickery v. State, 258 S.C. 33, 186 S.E.2d 827 (1972). Because a guilty plea is a solemn, judicial admission of the truth of the charges

11

> against an individual, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed. Blackledge v. Allison, 431 U.S. 63 (1977). Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents valid reasons why he should be allowed to depart from the truth of his statements. Crawford v. U.S., 519 F.2d 317 (4th Cir. 1975); Edmonds v. Lewis, 546 F.2d 566 (4th Cir. 1976). The Applicant showed no reason why he should be allowed to depart from the truth of the statements he made during his guilty plea hearing. This Court finds the Applicant's testimony at the PCR hearing lacked credibility. Therefore, this Court, as did the plea court, finds that Applicant's guilty plea was freely and voluntarily entered.

(R. at 100-02.)

As noted above, in order to obtain federal habeas relief, Petitioner must show that the state court's adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of" clearly established federal law or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding." 28 U.S.C. § 2254(d). Petitioner has not met that burden. The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id*. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id*. While *Strickland* itself is a deferential standard, when

both § 2254(d) and *Strickland* apply, "review is doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The two-part test enunciated in *Strickland* applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in *Strickland*], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

The state court found that Petitioner was not credible and that plea counsel was credible. (*See* R. at 100.) Such factual findings on credibility are "presumed to be correct"; Petitioner has the "burden of rebutting the presumption . . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003). Although Petitioner "emphasize[s] contrary facts" in his Response in Opposition to the Motion for Summary Judgment, doing so does not overcome the presumption of correctness by clear and convincing evidence. *See Wilson*, 352 F.3d at 860 ("These facts do not ***compel*** the credibility determination reached by the state court, but they certainly ***provide sufficient basis***, for purposes of section 2254(d)(2), to support such a determination." (emphasis added)); *see also Fisher v. Lee*, 215 F.3d 438, 446 (4th Cir. 2000) ("Fisher has not shown that the state court findings are unreasonable, unsupported, or otherwise erroneous. Indeed, they are supported by competent evidence.").

Moreover, to the extent Petitioner claims counsel was ineffective in advising him that he "would serve 85% when the sentence was day for day," the undersigned notes that at the plea hearing, Petitioner stated that he understood when the judge asked if he understood that he was "just pleading straight up to the offense of murder which carries a minimum sentence of 30 years up to life imprisonment." (R. at 8.) Petitioner answered "No, ma'am" to the following question: "With respect to this plea, has anyone offered you anything in exchange for your plea, meaning any hope of reward, any promise, ***or any particular sentence that they think I might give you***?" (R. at 8

13

(emphasis added).) Although Petitioner's attorney indicated the sentence "is an 85 percent sentence," the solicitor corrected counsel and indicated the sentence would be "day for day" and that "[t]here is no 85 percent." (R. at 15, 19.) The plea judge asked Petitioner if he understood, and Petitioner stated, "Yes, ma'am." (R. at 19.)

Although plea counsel testified at the PCR hearing that the solicitor "did not object to a 30-year sentence," plea counsel also testified that he told Petitioner that "whatever the judge sentences him to, and if the judge had sentenced him to 35 years, he's got to serve whatever the judge sentences him to." (R. at 64, 85.) This testimony is consistent with the transcript of the plea hearing, which indicates that Petitioner pled "straight up" to murder "which carries a minimum sentence of 30 years up to life imprisonment." (R. at 8.)

While counsel gave Petitioner incorrect advice about the 85 percent, the state court's conclusion that Petitioner was not prejudiced is not contrary to, or an unreasonable application of, clearly established federal law, nor is such a conclusion based on an unreasonable determination of the facts. The error was corrected during the plea hearing, and Petitioner told the plea judge that he understood he would have to serve day for day. The case did not involve a negotiated sentence–Petitioner pled "straight up" to murder. Additionally, plea counsel testified at the PCR hearing that his conversations with Petitioner "never centered" around parole eligibility and that the "amount of time that he would be given was not, in [their] discussions, the coup de grace." (R. at 83.) Moreover, as counsel stated at the PCR hearing, Petitioner "wasn't going to get any less than thirty" years on a murder conviction; the "only place for him to go was up." (R. at 84.) Petitioner testified at the PCR hearing that he shot the victim, and when asked what defense he had to the murder charge, Petitioner did not have an answer. (R. at 43, 50.) Counsel testified that self-defense was not applicable on the facts of the case because "a threat[] a week earlier does not justify shooting somebody from your car into the back of their car." (R. at 66.) The state court's rejection of Petitioner's ineffective assistance of counsel claim does not warrant habeas relief. *See Johnson v. Warden*, Civ. A. No. 2:10-3050-HFF-BHH, 2011 WL 1706963, at *6-7 (D.S.C. Apr. 13, 2011),

adopted at 2011 WL 1740129 (May 5, 2011) (no habeas relief where, *inter alia*, the petitioner testified he "was never told his sentence would be day for day" and "[p]lea counsel acknowledged that the guilty plea transcript reflects that he stated it was an 85% charge"; the court stated, "Here, the record of the guilty plea which includes a colloquy between the plea judge and the Petitioner regarding the requirement that the Petitioner serve a 30–year minimum sentence day for day and the plea counsel's testimony at the PCR hearing show that the Petitioner had a full understanding of the consequences of his plea and the charges against him, including the sentence."); *Keener v. Bazzle*, 481 F. Supp. 2d 521, 526-31 (D.S.C. 2007) (no habeas relief where the petitioner stated he understood there would be a "24-year parole date," and counsel testified that he "may have told [the petitioner] it was 85% on the 30 years" where the "PCR judge determined Petitioner chose to plead guilty because of the overwhelming evidence and his desire to avoid the specter of the death penalty . . . , and this determination is not unreasonable"); *see also Christian v. Ballard*, 792 F.3d 427, 452-53 (4th Cir. 2015) ("[T]o obtain relief from a guilty plea, the defendant must do more than allege he would have insisted on going to trial if counsel had not misadvised him as to the consequences of that decision. The petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." (internal quotation marks and citations omitted). *Cf. Garmon v. Lockhart*, 938 F.2d 120, 121-22 (8th Cir. 1991) (affirming grant of habeas relief, stating, "We recognize that not every instance of a lawyer's failure to inform a client accurately of parole eligibility will reach the level of a constitutional violation. Nevertheless, we agree with the district court that in this case Garmon impressed on his trial counsel the importance of parole eligibility to his decision to plead guilty, and Garmon would have pleaded not guilty and insisted on going to trial but for counsel's erroneous advice." (internal quotation marks and citations omitted)).

   To the extent Petitioner asserts his plea was not knowingly and voluntarily entered, the undersigned concludes Petitioner is not entitled to federal habeas relief. At the plea hearing, Investigator Hordle presented the following factual background for the plea:

> Your Honor, on August 6th, 2007, Kiara Fitzgerald was dropping a friend off at Brook Pines Apartments which is in Richland County. As Kiara was pulling into

>   the apartment complex, she was spotted by Tyrone Lewis who knew Kiara from a previous verbal altercation. Tyrone was with Michael Long and Anthony Ringle (phonetic). Tyrone was the driver of the vehicle and turned into the apartment complex, was able to get behind Kiara as she was pulling out of the apartment complex.
>   Without any provocation, Tyrone shot at Kiara's car several times, hitting her car four times. One of the bullets entered the car and struck Kiara in the back, ultimately causing her death. . . . During the course of the investigation, it was learned that Kiara had an ongoing problem with several of the blood gang members. Tyrone Lewis is a self-proclaimed blood gang member.
>   Tyrone Lewis and Michael Long were identified as persons of interest and were questioned. Tyrone Lewis gave several different accounts as to what happened. Tyrone stated that after the shooting, he and Michael Long hid the guns and did show investigators where the guns were located. All the shell casings that were recovered at the scene were compared to the weapons that were recovered and showed only one of the guns fired at the scene.
>   Both Michael Long and Anthony Ringle gave written statements that corroborated one another and identified Tyrone Lewis as the only shooter. Investigators were also able to legally obtain a recording where Tyrone Lewis confessed to shooting at the vehicle.

(R. at 3-5.) Petitioner stated that he did not dispute any of those facts. (R. at 5.)[2]

Petitioner stated that he understood that by pleading guilty he was waiving "all of [his] constitutional rights," including the right against self-incrimination and the right to a jury trial. (R. at 5-6.) He stated he understood that the State had the burden of convincing twelve jurors beyond a reasonable doubt that he committed the offense and that he did not "even have to put up a defense" at trial. (R. at 6.) He indicated an understanding to the fact that by pleading guilty, he was "waiving [his] ability to even present a defense to this case." (R. at 6-7.) Petitioner stated that he understood

---

[2]In his Response in Opposition to the Motion for Summary Judgment, Petitioner asserts the facts are different from the ones he agreed to at his plea hearing. (*See* Dkt. No. 25 at 2-3 of 26.) Petitioner states his "theory" as follows (verbatim):
>   [O]n August 6, 2007, Petitioner was the driver of a vehicle living [sic] out of Brook Pines Apartment complex. In contrast, Kiara Fitzgerald, the victim, had dropped off one of her leaving the apartment complex, spotted Petitioner also leaving, Kiara and the other occupant in her vehicle had made threats upon the Petitioner's life. Upon Kiara initiative to intimidate Petitioner, Kiara pulled out in front of the Petitioner's vehicle, on this appearance and provocation shots was fired.

(Dkt. No. 25 at 2-3 of 26.) To the extent Petitioner seeks to present new evidence to support the claim that counsel was ineffective in failing to investigate defenses, § 2254(d) prohibits him from doing so. *See* 28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("hold[ing] that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

that by pleading guilty, he was also waiving a right to challenge evidence that he believed was illegally obtained. (R. at 7-8.) Petitioner stated that no one had threatened or forced him to plead guilty, and that he was doing so "freely and voluntarily." (R. at 7.) Petitioner stated he had enough time to speak with his attorney and felt like he "had enough time to make an informed . . . decision about whether [he] should plead guilty or go to trial." (R. at 7.) Petitioner stated that he was satisfied with his attorney's representation and did not need any additional time to speak with him. (R. at 9.)

In light of the foregoing, the state court's conclusion that Petitioner's plea was freely and voluntarily entered is not contrary to, or an unreasonable application of, clearly established federal law, nor is it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *see also Doe v. Woodford*, 508 F.3d 563, 572 (9th Cir. 2007) (rejecting involuntary plea argument where the petitioner "participated in a thorough plea colloquy, in which he answered in the affirmative that his plea was voluntary under the circumstances and, specifically answered in the affirmative when asked if he had had enough time to discuss the plea with his attorneys"); *United States v. Solomon*, 106 F. App'x 170, 171 (4th Cir. 2004); *United States v. Robinson*, 82 F. App'x 322, 323 (4th Cir. 2003) ("Robinson's plea colloquy reveals that his plea was knowingly and voluntarily entered into."); *United States v. DeFusco*, 949 F.2d 114, 119-20 (4th Cir. 1991). The undersigned therefore recommends granting Respondent's Motion for Summary Judgment.

## **CONCLUSION**

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 19) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[3]

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

December 22, 2015
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[3]Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).